UNITED STATES DISTRICT COURT                                    O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NATIONWIDE PUBLIC INSURANCE ADJUSTERS INC, | § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. M-12-96 |
| EDCOUCH-ELSA I.S.D., *et al*, | § § | |
| Defendants. | § § | |

## OPINION AND ORDER

Pending before the Court is a motion to compel arbitration filed by Nationwide Public Insurance Adjusters, Inc. ("Nationwide").[1]   Edcouch-Elsa Independent School District ("EEISD") responded,[2] and Nationwide replied.[3]   Before turning to the motion to compel arbitration, the Court will first address what has happened since the Court's previous order addressing EEISD's motion to dismiss.[4]

### I.      Recent Activity

In its previous order, the Court dismissed all of Nationwide's claims, with the exception of Nationwide's request for arbitration on which the Court withheld its ruling.[5]   The Court found that Nationwide's state law claims in the first amended complaint were barred by governmental immunity.   But, EEISD had sued Nationwide and Jeff Greene in a separate case, 7:12-cv-137, which was consolidated into this case.   In that separate case, Nationwide and Greene had filed counterclaims with their answer.   The fact that EEISD was acting as a plaintiff raised the specter

---

[1] Dkt. No. 16.
[2] Dkt. No. 20.
[3] Dkt. No. 21.
[4] Dkt. No. 25.
[5] Dkt. No. 25.

of a type of immunity which the Texas Supreme Court addressed in *Reata Construction Corp. v. City of Dallas*,[6] but had not been discussed by the parties.  Specifically, under *Reata*,

> [t]he decision by [EEISD] to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to claims [EEISD] asserts.  Once it asserts affirmative claims for monetary recovery, [EEISD] must participate in the litigation process as an ordinary litigant, save for the limitation that [EEISD] continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset [EEISD's] claims.[7]

Therefore, before addressing the motion to compel arbitration, the Court permitted EEISD to amend its complaint, and provided Nationwide and Greene an opportunity to file an amended answer.  (Due to the consolidation of the two cases, as well as the dismissal of all of Nationwide's claims from its first amended complaint beyond the request to compel arbitration, EEISD has become the de facto plaintiff in this case.)

On January 22, 2013, EEISD filed an amended complaint in which it "seeks a declaration that the contract in question is void as a matter of law."[8]  Furthermore, "[EEISD] **does not seek monetary damages, attorney's fees, court costs, or any other fees, costs, or monetary damages of any kind.  Moreover, [EEISD] does not seek any other and further relief aside from its request for the aforementioned declaration.**"[9]  Nationwide, on the other hand, seeks an order compelling arbitration.

## II.    Motion to Compel Arbitration

Nationwide argues that it has an enforceable arbitration agreement with EEISD.  EEISD claims that the Court lacks subject matter jurisdiction to compel arbitration, that the arbitration provision is unenforceable because it was induced by fraud, and that the arbitration clause may

---

[6] 197 S.W.3d 371 (Tex. 2006).
[7] *Id*. at 377.
[8] Dkt. No. 27 at ¶ 7.
[9] Dkt. No. 27 at ¶ 8 (emphasis in original).

only be enforced in state court.  The Court addresses the issue of subject matter jurisdiction first, as without it, the Court may not proceed.

**A.      Subject Matter Jurisdiction**

EEISD argues that the Court lacks subject matter jurisdiction to compel arbitration because EEISD's immunity from suit has not been waived.  Because EEISD originally sought monetary relief from this Court, the Court finds that EEISD waived its immunity from suit under *Reata*.  However, the fact that the amended complaint omitted the request for affirmative monetary relief does not resurrect EEISD's governmental immunity from suit.[10]  Therefore, the Court has subject matter jurisdiction to consider the motion to compel arbitration.  Because the Court has jurisdiction due to EEISD's *Reata* waiver, it will not address the parties' arguments regarding a statutory waiver of governmental immunity under § 271.152 of the Local Government Code.  Additionally, the Court **DENIES** EEISD's motion to dismiss Nationwide's request to compel arbitration.

**B.      Analysis**

The parties are in agreement that, at the very least, the Federal Arbitration Act ("FAA") applies to the arbitration provision in this case.[11]  The Fifth Circuit has set out a two-step process for district courts considering whether to compel arbitration under the FAA.

> The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.  When deciding whether the parties agreed to arbitrate the dispute in question, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.  In applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.  The second step

---

[10] City of Dallas v. Albert, 354 S.W.3d 368, 374-76 (Tex. 2011) ("[T]he City's nonsuit did not reinstate, or more aptly, create, immunity for the City.").
[11] Dkt. No. 16 at p. 17; Dkt. No. 20 at pp. 8-9.

is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.[12]

The Court will follow the Fifth Circuit's instructions in analyzing Nationwide's motion to compel arbitration.

## 1.      Step One: Whether the Parties Agreed To Arbitrate the Dispute in Question

This first step is actually divided into two components: (1) the validity of the agreement and (2) the scope of the arbitration agreement.   Although EEISD focuses its attention on the validity of the agreement, the Court will address both components.

## a.      Whether There is a Valid Arbitration Agreement

The arbitration agreement in question has been presented to the Court by both parties.   It states:

> This Agreement is governed under the laws of Texas.  The parties agree that any and all disputes, claims or controversies arising out of or relating to this agreement not resolved by their mutual agreement shall be submitted to final and binding arbitration before an agreed upon arbitration body pursuant to the Texas rules of arbitration.  Prior to the inanition (sic) of arbitration proceedings the parties agree to mediate any disputes or claims with a mediator mutually agreed upon by the parties.  Either party may commence the arbitration process called for in this agreement by filing a written demand for arbitration with the agreed upon arbitration body and/or the other party.  The parties will cooperate in scheduling the arbitration proceedings.  Each party will select an arbitrator from a panel of neutrals.  The two arbitrators will jointly select a third arbitrator from a panel of neutrals.  The three person panel will arrive at a decision.  The parties covenant that they will participate in the arbitration in good faith, and that they will share equally in its costs, each paying for their arbitrator and half the cost of the third arbitrator.  The parties agree that the invocation of arbitration proceeding pursuant to this contract or any matter related here to shall not extend any right to arbitration to any third party affected by this contract.  The provisions of this Paragraph may be enforced by the State district court in Hildalgo (sic) County, Texas.  [A]nd the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.[13]

EEISD makes two arguments challenging the enforceability of the arbitration provision.

---

[12] Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996) (internal quotation marks and citations omitted).
[13] Dkt. No. 16-1 at p. 4; Dkt. No. 20-2 at p. 5.

First, EEISD attacks the validity of the arbitration provision by alleging that EEISD was fraudulently induced into entering the arbitration agreement.[14]   For EEISD to prevail on its fraudulent inducement theory, EEISD

> must prove that: (1) [Nationwide] made a material representation that was false; (2) it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) it intended to induce [EEISD] to act upon the representation; and (4) [EEISD] actually and justifiably relied upon the representation and thereby suffered injury.[15]

Here, EEISD and Nationwide have presented disparate accounts of how the arbitration provision was included in the contract.

For its part, EEISD claims that Gustavo L. Acevedo, Jr. ("Acevedo") specifically deleted the entire arbitration provision from the draft contract, and that EEISD's Board of Trustees approved the contract subject to Acevedo's revisions which included the deletion of the arbitration provision.[16]  EEISD asserts that Acevedo informed Nationwide that the arbitration provision had to be deleted, and Nationwide assured Acevedo that it would be deleted.[17]  EEISD avers that when Acevedo was not present, Nationwide presented a version of the contract which still contained the arbitration provision to Michael Sandroussi, EEISD's superintendent, and Nationwide remained silent about the presence of the arbitration provision in the contract while Michael Sandroussi signed the contract.[18]

On the other hand, Nationwide claims that Acevedo was fully aware of presence of the arbitration provision.  Specifically, Nationwide claims that it altered a portion of the arbitration

---

[14] Dkt. No. 20 at pp. 7-12.
[15] Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).
[16] Dkt. No. 20 at p. 11.
[17] Dkt. No. 20 at pp. 11-12.
[18] Dkt. No. 20 at p. 12.

provision at Acevedo's request, and that Sandroussi did not sign the final version of the contract

until the new language had been expressly approved by Acevedo.[19]

Although it is impossible for both of these accounts to be true, the Court need not resolve

the factual discrepancies in this case.  A Texas Court of Appeals has explained:

> One of the elements of a fraud claim is that the plaintiff actually *and justifiably* relied on the misrepresentation to suffer injury.  In this regard, a party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party. Therefore, reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law.

> This principle is also dictated by policy and practical considerations. If written contracts are to serve a purpose under the law, relative to oral agreements, it is to provide greater certainty regarding what the terms of the transaction are and that those terms will be binding, thereby lessening the potential for error, misfortune, and dispute.[20]

The Court of Appeals further explained:

> The essential issue, then, is not whether that party's evidence of the contrary oral agreement is admissible or sufficient to *prove* that agreement, but instead whether the law will deem such reliance to be justified and thereby favor that party to the detriment of the other contracting party, which has at least declared its intent in the contract and sought to abide by its terms.  Because such an approach would defeat the ability of written contracts to provide certainty and avoid dispute, the prevailing rule, recited above, is instead that a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract.[21]

The Court of Appeals then concluded:  "In this case, therefore, even assuming [the] evidence [of

the party arguing fraudulent inducement] to be admissible and sufficient to show its actual

---

[19] Dkt. No. 21 at pp. 8-12.
[20] DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A., 112 S.W.3d 854, 858 (Tex. App.—Hous. [14th Dist.] 2003, pet. denied) (internal citations omitted).
[21] *Id*. at 858-59 (internal citations omitted).

reliance on a contrary oral agreement, that reliance could not, as a matter of law, have been justified."[22]

Similarly, in this case, the Court finds that the contract containing the arbitration provision represented an arms-length transaction between EEISD and Nationwide, two sophisticated parties, and that EEISD was represented by counsel.  Thus, even assuming EEISD's allegations are true, the Court finds that EEISD could not, as a matter of law, have justifiably relied on Nationwide's oral representations that the arbitration provision would be stricken from the final version when the contract signed by EEISD clearly contained the arbitration provision.  This is especially true in the case where the agreement is only four pages long, each page was initialed by both parties, the agreement was signed by *the superintendent of schools, and the arbitration clause immediately precedes the signature*.  **The Court finds that EEISD's fraudulent inducement argument is without merit.**

Second, EEISD claims that the arbitration provision may only be enforced in state court.[23]  Strictly speaking, this is not a challenge to the validity of the arbitration agreement, but the Court will address it here.  EEISD bases its argument on the portion of the contract which states: "The provisions of this Paragraph may be enforced by the State district court in Hildalgo (sic) County, Texas."[24]  The Court rejects this argument.  Quite simply, the word "may" is permissive language.  It does not *require* the arbitration provision to be enforced in that court.  It merely permits the arbitration agreement to be enforced in that court.[25]

---

[22] *Id*.
[23] Dkt. No. 20 at pp. 12-13.
[24] Dkt. No. 20-2, at p. 5.
[25] *See* Caldas & Sons, Inc. v. Willingham, 17 F.3d 123, 127-28 (5th Cir. 1994).

Ultimately, the Court finds that EEISD and Nationwide entered into a valid arbitration agreement.  The Court will now consider whether this dispute falls within the scope of the arbitration agreement.

### b.    Whether the Agreement Covers This Dispute

EEISD only challenges the validity of the arbitration provision, but it does not argue that the dispute between EEISD and Nationwide falls outside the scope of the arbitration provision. For its part, Nationwide argues that this dispute falls within the scope of the arbitration provision.[26]  "We resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration . . . . [A]rbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."[27]  Based on the language in the arbitration provision, it states that "any and all disputes, claims or controversies arising out of or relating to this agreement not resolved by their mutual agreement shall be submitted to final and binding arbitration before an agreed upon arbitration body pursuant to the Texas rules of arbitration."[28]  After reviewing the parties amended pleadings,[29] the Court finds that this dispute falls squarely within the scope of the arbitration provision.

### 2.    Step Two: Whether External Legal Constraints Foreclose Arbitration

In this case, EEISD does not argue that there are any external legal constraints that would foreclose arbitration.  For its part, Nationwide argues that there is no such constraint.[30] Furthermore, the Court is not aware of any external legal constraints which would foreclose

---

[26] Dkt. No. 16 at pp. 18-19.
[27] Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) (internal quotation marks and citations omitted).
[28] Dkt. No. 16-1 at p. 4; Dkt. No. 20-2 at p. 5.
[29] *See* Dkt. Nos. 27 & 28.
[30] Dkt. No. 16 at p. 19.

arbitration in this case.  Therefore the Court finds that there are no external constraints which foreclose arbitration.

**C.      Conclusion**

After considering Nationwide's motion to compel arbitration, the response, the reply, the record and the relevant authorities, the Court finds that it has subject matter jurisdiction to consider the motion to compel arbitration.  Furthermore, the Court finds there is a valid arbitration agreement in this case, that the disputes in this case fall squarely within the scope of the arbitration agreement, and that no external legal constraints foreclose arbitration.  Therefore, the Court **GRANTS** the motion to compel arbitration.  The Court orders the parties to arbitrate this case in accordance with their arbitration agreement and stays this case, pending arbitration, for a six-month period.  The parties are to report the status of arbitration on or before September 24, 2013, so that this Court may determine whether the case should remain open.

IT IS SO ORDERED.

DONE this 28th day of March, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE